IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **American Bird Conservancy**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**Dan Brouillette**, et al.,<br><br>Defendants. | Case No. 1:19-cv-03694-TJK<br><br>**Federal Defendants' Motion to Stay Case** |

Federal Defendants move to stay this case up to and including January 13, 2021. The motion is based upon the current status of the Department of Energy cooperative funding agreement with Lake Erie Energy Development Corporation, the developer of the project at issue in the Complaint. Proceeding further with the case at this time would be premature—and potentially a waste of the parties' and Court's resources—because the cooperative agreement is not currently (and may never be) at a stage where federal funding would be used to construct the project that Plaintiffs allege would cause them harm. We have conferred with Plaintiffs' counsel regarding the stay; Plaintiffs oppose.

1

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In exercising that authority, the court is to "'weigh competing interests and maintain an even balance' between the court's interest in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting and citing *Landis*, 299 U.S. at 254–55, 259) (internal citations omitted).

Plaintiffs challenge a U.S. Department of Energy cooperative funding agreement and a U.S. Army Corps of Engineers Clean Water Act permit associated with construction of Project Icebreaker, a six-turbine wind energy demonstration project planned in Lake Erie near Cleveland, Ohio. The Lake Erie Energy Development Corporation, or LEEDCo, is developing the project. LEEDCo is the recipient of funds under the Department of Energy cooperative agreement, which are to be used to assist in the design, construction, and operation the demonstration project.

Plaintiffs allege that the Department of Energy funding decision and Corps permit were arbitrary and capricious under the Administrative Procedure Act because the agencies failed to comply, respectively, with the National Environmental Policy Act and Clean Water Act. *See* Compl. ¶¶ 93–

104, ECF No. 1.[1]

Good cause exists to stay proceedings in this case.  The Department of Energy cooperative agreement is structured into five budget periods.  Decl. of Michael R. Derby ("Derby Decl.") ¶ 4.  At the end of each budget period, the Department conducts a go/no-go review to decide if all the requirements for the then-present budget period have been met and if LEEDCo can move into the next budget period.  *See id*. ¶¶ 4, 9; Special Terms and Conditions ("T&C") 14–15, 17–18 (attached as Ex. A); Statement of Project Objectives ("SOPO") 20–22 (attached as Ex. B).  To date, the Department of Energy has only authorized LEEDCo to proceed with Budget Period 1 and Budget Period 2 activities. Derby Decl. ¶ 5; T&C at 7–8.  The Department made approximately $6,700,000 available under Budget Periods 1 and 2, or only about fifteen percent of the total federal share and 3.5 percent of the demonstration project's estimated total cost.  *See* T&C at 16.

LEEDCo has been in Budget Period 2 of the award for more than four years (since April 2016).  Derby Decl. ¶ 5.  Budget Period 2 is focused on advancing the project to a point where it is ready to pursue full financing, and

---

[1] The case is currently in summary judgment briefing.  Plaintiffs filed their motion for summary judgment on August 28.  Federal Defendants' response and cross-motion are due on October 13.  Briefing is currently scheduled to conclude on January 25, 2021, with the filing of the administrative record appendix under Local Civil Rule 7(n).  *See* July 24, 2020, Minute Order. Should the Court deny the stay motion, the parties have agreed that Federal Defendants' response and cross-motion would be due 21 days thereafter.

includes several planning and compliance tasks, including completion of
technical design plans and receipt of necessary permits.  SOPO at 3–4, 11–21.
Currently, however, several important Budget Period 2 tasks remain
outstanding.  *See* Derby Decl. ¶ 6.  Among them are completion of design and
verification for the turbines, foundations, and electrical systems; development
of installation and operation and maintenance plans; a certificate from the
Ohio Power Siting Board; and, significantly, interconnection and power
purchase agreements.  *See id.*

Budget Period 2 was originally scheduled to be completed by February
2018.  Derby Decl. ¶ 5.  This was later modified to June 30, 2020, which would
have been before Plaintiffs' summary judgment brief was due.  *See id.*  On June
29, 2020, however, the Department of Energy granted, at LEEDCo's request, a
no-cost time extension until December 31, 2020, giving LEEDCo additional
time to complete Budget Period 2 tasks.  *Id.*  At this time, the Department of
Energy has not scheduled a go/no-go review for LEEDCo to move from Budget
Period 2 to Budget Period 3.  *Id.* ¶ 4.

If no further extension is granted, the Department of Energy will likely
begin its go/no-go review in January 2021 and make a decision on whether or
not LEEDCo moves into Budget Period 3.  Derby Decl. ¶¶ 5, 7; SOPO at 20–21.
If the review results in a "No-Go" decision, the cooperative agreement will be
terminated.  Derby Decl. ¶ 7.  Should the Department of Energy make a "Go"

decision, the Department and LEEDCo would then negotiate modifications to the cooperative agreement for Budget Period 3. *Id.* The Department expects that the negotiation and modification process would take at least one or two months. *Id.* LEEDCo would not have access to Budget Period 3 funds until completion of that negotiation and modification process. *Id.*

Budget Period 3 is aimed at the project obtaining full financing—the majority of which would be non-federal—and would be expected to last at least five and a half months. *See* Derby Decl. ¶ 8; SOPO at 21. The nature of the tasks that would need to be accomplished in Budget Period 3, however, may require extension of that timeline. Derby Decl. ¶ 8. For example, Budget Period 3 would require LEEDCo to obtain commitments from one or more private developers to provide significant financial investment to the project. *See id.*

Further, because LEEDCo remains in Budget Period 2, the Department of Energy has not yet authorized the expenditure of award funds for activities in Budget Period 4 or Budget Period 5. Derby Decl. ¶ 9; T&C at 7–8, 17–18. Department of Energy go/no-go decision points also exist before LEEDCo can move from Budget Period 3 to Budget Period 4, or from Budget Period 4 to Budget Period 5. Derby Decl. ¶ 9; SOPO at 21–22. It is not anticipated that any award funds would be used for construction or installation of the project until Budget Period 4. *See* SOPO at 21–22.

5

The fact that the Department of Energy cooperative agreement remains in Budget Period 2 presents a significant Constitutional ripeness question for Plaintiffs' National Environmental Policy Act (NEPA) claim against the Department of Energy.[2]  Ripeness, like the separate but related standing doctrine, includes the "constitutional requirement . . . that an injury in fact be certainly impending." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). "Allegations of possible future injury do not satisfy the requirements of [Article] III." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "Until the point of irreversible and irretrievable commitment of resources has been reached," any challenge to NEPA compliance is "premature." *Id.* at 50.

In filing their motion for summary judgment, Plaintiffs have now made clear that their alleged harms here are ones from the presence and operation of the wind turbines—the turbines could harm birds, which, in turn, will allegedly impact the recreational interests of Plaintiffs' members. *See, e.g.,*

---

[2] Because it is possible that LEEDCo will not proceed past Budget Period 2 at all—thus potentially mooting some or all of the case—a stay is more efficient than having the Court now resolve the ripeness questions surrounding the NEPA claim against the Department of Energy.  True, Plaintiffs also challenge the Corps permit.  But that challenge is based upon an alleged violation of the Clean Water Act, not NEPA.  *See* Compl. ¶¶ 94, 102; Mem. in Support of Pls.' Mot. for Summ. J. 41–45, ECF No. 11-1.  Judicial economy favors staying the entire case, rather than proceeding with piecemeal and potentially-repetitive adjudication.

Decl. of Michael Parr ¶¶ 14–16, ECF No. 11-2.  Based on the current structure of the cooperative agreement, however, no Department of Energy funds could be used for installation or construction until Budget Period 4.  *See* SOPO at 21–22.  Thus, the Department of Energy has not made—indeed, may never make—an irreversible or irretrievable commitment to anything that could actually injure Plaintiffs.  The ripeness issue is underscored by the fact that, before LEEDCo could proceed to Budget Period 4, the Department of Energy would be conducting a NEPA consistency review and, if necessary, undertaking additional NEPA analyses based upon any changes to the project.  Derby Decl. ¶ 8; SOPO at 21.  This would include any significant changes in project design, the plans for which LEEDCo has yet to even complete.  *See* Derby Decl. ¶¶ 6, 8.

In any event, and at a minimum, the question of when (or if) LEEDCo will advance out of Budget Period 2 implicates concerns for judicial economy and counsels in favor of staying the case until such a time as LEEDCo has successfully advanced to at least Budget Period 3.  It makes little sense to proceed if the Department of Energy would only end up terminating the cooperative agreement at the end of Budget Period 2.

Plaintiffs will not suffer any harm during (or as a result of) the proposed stay.  As noted above, Plaintiffs' alleged harms relate to the presence and operation of the wind turbines.  But federal funding for construction is not expected to occur even in Budget Period 3.  Should the Department of Energy

reach a "Go" decision at the end of Budget Period 2, there would be ample opportunity—at a minimum, six to seven months—for the parties to complete summary judgment briefing (and for the Court to rule) before LEEDCo would likely be prepared to move to Budget Period 4.[3]  *See* Derby Decl. ¶ 8; *see also* SOPO at 21 (planning one year for Budget Period 3).  And, even considering Budget Period 3, the federal funding dedicated to the Project would amount to only about nine percent of the estimated total project costs.  *See* Derby Decl. ¶ 9 (noting $10.3 million planned for Budget Period 3); T&C at 16 (listing Budget Period 1 and 2 amounts, and total estimated project costs); Derby Decl. ¶ 4 (total cost share).  Courts have concluded that such limited federal funding does not "federalize" the entirety of an otherwise non-federal project for NEPA purposes.  *See Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1100–02 (9th Cir. 2007).  Though the demonstration project could theoretically proceed without Department of Energy funding, there are no facts of which we are aware to suggest that installation would begin any time in the immediate future.

During the pendency of the stay, Federal Defendants' counsel would inform Plaintiffs' counsel if and when the Department of Energy either issues another extension of time beyond December 31, 2020, or schedules a Budget Period 2 go/no-go review date for the project.  Federal Defendants would also

---

[3] Even in Budget Period 3, Plaintiffs' NEPA claim against the Department of Energy may not be ripe because of the additional go/no-go decision point at the end of that budget period.

plan, after conferring with Plaintiffs' counsel, to file a status report at the end

of the proposed stay (on January 13, 2021) proposing how the case should

proceed.

Based upon the foregoing, Federal Defendants request that proceedings

in this case be stayed up to and including January 13, 2021.


Date: September 25, 2020

JEAN E. WILLIAMS
Deputy Assistant Attorney General

_Kristofor R. Swanson_
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
Senior Attorney
Natural Resources Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0248
Fax: (202) 305-0506
kristofor.swanson@usdoj.gov

___s/ Caitlin McCusker_____
CAITLIN MCCUSKER
Environmental Defense Section
Envt. & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 514-1950
caitlin.mccusker@usdoj.gov